CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

December 11, 2024

LAURA A. AUSTIN, CLERK
BY:
　　　s/A. Beeson
　　　DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

REYCE ANDRE LEVON COLLINS,          )
　　　　Plaintiff,                  )          Civil Action No. 7:22-cv-00406
                                     )
v.                                   )
                                     )          By: Elizabeth K. Dillon
ELI DAVIS, *et al.*,                 )               Chief United States District Judge
　　　　Defendants.                 )

## MEMORANDUM OPINION AND ORDER

This matter is currently scheduled for a jury trial in the Roanoke division of this court on December 16–18, 2024. At the final pretrial conference, the parties were directed to establish a briefing schedule and file briefs with respect to whether there is a claim for supervisory liability against one of the remaining defendants in this action, Captain Catherine Sturman. Those briefs have been received and are before the court for consideration. For the reasons set forth below, Sturman's motion for summary judgment will be denied.

### I. BACKGROUND

Collins's complaint alleges that, on August 23, 2021, after he got into a verbal dispute with Captain Sturman at Pocahontas State Correctional Center, he was escorted to the Restorative Housing Unit (RHU) in handcuffs. Once there and while he was being restrained by two officers, he was physically assaulted by defendant Eli Davis. The assault included Davis striking Collins in the face four times with a closed fist and choking Collins for approximately five seconds. (Compl. 3, 6, Dkt. No. 1.)

In his grievance, filed as an attachment to his complaint, Collins claims that he was assaulted "following a verbal altercation with Captain C. Sturman." (Dkt. No. 1-1.) Plaintiff stated as follows:

> The reason that I was even detained in the first place, was due in large part, to a misunderstanding between a female PSCC staff member and myself. Basically, Captain C. Sturman, overheard my repeated attempts to coax another inmate into letting me acquire their Rice Krispie Treats off of their tray, and she mistook the exchange as 'bullying & badgering' him . . . . Evidently not appreciating my rebuttal, she ordered me to step back outside the chowhall, and to face the wall, as she retrieved her handcuffs. 'Who do you think you're talking to", is all I remember her saying, although I'm sure she said more than that. Once she placed me in handcuffs, the two closest PSCC Correctional Officers to our location were assigned the task of escorting me to the Restorative Housing Unit.

(*Id.* at 25.) Plaintiff stated in his grievance that the verbal altercation with Capt. Sturman "caused the treatment [he] was getting" in the RHU. (*Id.* at 26.) In the RHU, there is a known blind spot just inside the entrance. (*Id.* at 40.)

Before punching Collins, Davis stated, "So you think you're just going to disrespect my staff?" (*Id.* at 27.) When Sturman came to the RHU after the assault, Collins was still in handcuffs, tethered to the RHU shower, and bleeding from his head. (*Id.* at 29–30.) Sturman asked Collins, "Are you okay?" (*Id.* at 21.) Collins asked her, "Why did ol'dude [Sgt. Davis] have to put his hands on me though? All of that was unnecessary." (*Id.* at 29.) While looking at Collins, who was bleeding and disoriented, she responded, "I don't know nothing about all of that . . . for all I know, you must've tripped and fell." (*Id.*) Captain Sturman and Officer Heffinger repeated similar statements to Collins about "how it's done in the mountains" after the assault by Davis. (*Id.* at 30.) Sturman left Collins in cuffs and tethered to the shower. (*Id.* at 29.)

Sturman told the Special Investigator, Agent Jesse Wagner, that "no acts of physical violence took place." (*Id.* at 8.) Collins alleges that Sturman lied and provided false information

2

during the investigation.  (Compl. 6.)  Collins did not receive any disciplinary charges for his

verbal altercation with Sturman.  (Dkt. No. 1-1 at 29.)

## II.  ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some*

alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material*

fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light

most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986).  Additionally, the party opposing summary judgment

"must do more than simply show that there is some metaphysical doubt as to the material facts."

*Id.* at 586.  That is, once the movant has met its burden to show the absence of a material fact

dispute, the party opposing summary judgment must then come forward with affidavits or other

evidence demonstrating there is indeed a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323–25 (1986).  If "the evidence is such that a reasonable jury could return a verdict

for the nonmoving party," then a dispute of fact precludes summary judgment.  *Anderson*, 477

U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

While plaintiff is now represented by counsel, his complaint was filed when he was

acting *pro se*, which means that it must be "liberally construed."  *Erickson v. Pardus*, 551 U.S.

89, 94 (2007).  "A pro se complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers." *Stoots v. Sparti*, Civil Action No. 7:22-cv-00196, 2023 WL 6447317, at *4 (W.D. Va. Sept. 29, 2023) (citing *Erickson*, 551 U.S. at 94).

**B.    Personal Involvement**

To state a claim pursuant to 42 U.S.C. § 1983, plaintiff must demonstrate that Captain Sturman, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001). At the summary judgment stage, plaintiff must show defendant's personal involvement for liability to attach under § 1983. *Williamson v. Stirling*, 912 F.3d 154, 171–72 (4th Cir. 2018) (noting that a plaintiff must affirmatively show that the official acted personally in violating plaintiff's constitutional rights).

Plaintiff initially frames Captain Sturman's liability as falling under the general test to establish supervisory liability. *See Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (stating that supervisory liability applies when the plaintiff shows (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff). However, the court agrees with plaintiff's alternative argument that Captain Sturman may be liable based on her personal involvement in the alleged assault.

"If the basis of a complaint involves an accusation that a supervisor participated in the wrongful conduct, . . . a plaintiff may claim that the supervisor was personally involved in that conduct and liable for either tacitly authorizing the conduct or through the supervisor's own affirmative misconduct." *Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 464 (M.D.N.C.

2016) (citing *Cranford v. Frick*, No. 1:05CV00062, 2007 WL 676687, at *5 (M.D.N.C. Feb. 28,
2007)); *see also Randall v. Prince George's Cnty.*, 302 F.3d 188, 202 (4th Cir. 2002).  Section
1983 liability does not arise for "mere negligence, or even gross negligence in 'failing to detect
and prevent subordinates' misconduct.'  Instead, a supervisor 'must know about the conduct and
facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see.'"
*Cranford*, 2007 WL 676687, at *5 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.
1988)).  This type of conduct is necessary because it is the "supervisor's participation in
wrongdoing [that] will trigger liability."  *Jasinski v. Adams*, 781 F.2d 843, 848 (11th Cir. 1986).
Such allegations of "affirmative misconduct" relieve the plaintiff of his burden of showing
"deliberate indifference" for purposes of supervisory liability and provides a sufficient basis for
individual liability under § 1983.  *See Cranford*, 2007 WL 676687, at *6 (citing *Randall*, 302
F.3d at 202–03; *Jasinski*, 781 F.2d at 848).

On the day in question, August 23, 2021, Collins was handcuffed and taken to the RHU,
and it appears undisputed that this occurred because of Collins's verbal altercation with Captain
Sturman.  After the assault, when Collins asked Sturman why Davis assaulted him, Sturman
stated "I don't know nothing about all of that . . . for all I know, you must've tripped and fell."
A reasonable jury could infer that Sturman was being coy and that she knew Davis assaulted
Collins.  Sturman's statement about this being "how it is done in the mountains" would support
that inference, as well.  It could also be inferred that Sturman wanted Davis to assault Collins as
revenge for "disrespecting" her.  Sturman argues that the facts recited by plaintiff start with her
conduct after the assault, but this is not true.  Collins's altercation with Sturman was what caused
plaintiff to be taken to the RHU, and the facts imply that Sturman directed officers, including
Davis, to take him there.  Other facts supporting the inference that Sturman facilitated the assault
include the RHU's known blind spots and Collins not being formally disciplined for his verbal
altercation with Sturman, implying that the assault was meant to be the punishment.  Thus, there

are issues of fact as to whether Sturman knew about Sgt. Davis's assault of Collins and condoned it, facilitated it, approved it, or "turned a blind eye" for fear of what she might see.

III.  CONCLUSION

For the reasons stated herein, it is hereby ORDERED that defendant's motion for summary judgment (Dkt. No. 75) is DENIED.  The Clerk is directed to send copies of this memorandum opinion and order to all counsel of record.

Entered: December 11, 2024.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
Chief United States District Judge